## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **WILLIAM BARBARINO, on behalf of himself and all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. _____** |
| **PLAYTIKA LTD., and PLAYTIKA HOLDING CORP.,** | ) ) ) | |
| **Defendants.** | ) ) | |

### STATEWIDE CLASS ACTION COMPLAINT

Plaintiff William Barbarino, an adult resident citizen of Gloucester County, New Jersey, on his own behalf and on behalf of all others similarly situated in the state of New Jersey, files this statewide class action complaint against Playtika, Ltd. and Playtika Holding Corp. (collectively, "Playtika" or "Defendants.")

1.     This state-wide class action seeks recovery of illegal gambling losses by New Jersey residents who played Playtika's illegal online gambling games. Plaintiff seeks, on her own behalf and on behalf of all similarly situated New Jersey residents:

(1) a ruling that Playtika's games violate federal law, and that Playtika's online terms of service set out the terms and conditions under which the illegal gambling is conducted and are therefore unenforceable in a federal court;

(2) a ruling that the online terms of service promulgated by Playtika, as well as the arbitration and delegation provisions contained in the terms of service are each void as violative of New Jersey law;

(3) a determination that provisions in the Playtika Terms of Service that prevent customers from effectively vindicating statutory rights are void and unenforceable.

(4) recovery under the New Jersey gambling loss recovery act, NJRS § 2A:40-5; and

(5) recovery under the New Jersey Consumer Fraud Act.

Plaintiff also seeks on his own behalf losses of New Jersey residents pursuant to NJRS § 2A:40-6 which are not recoverable by class members.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff William Barbarino is an adult resident citizen of Gloucester County, New Jersey, within this district. He played the illegal gambling games described below in this district.

3.      Defendant Playtika, Holding Corp. is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Henderson, Nevada. It does business through online games in the state of New Jersey. It does not have a physical place of business in New Jersey.

4.      Defendant Playtika, Ltd. is a business entity organized and existing under the laws of Israel and headquartered in Herzliya, Israel. It does business through online games in the state of New Jersey. It does not have a physical place of business in New Jersey.

5.      The events giving rise to plaintiff's claims occurred in the District of New Jersey, such that venue is proper in this forum pursuant to 28 U.S.C. § 1391(b)(2).

6.      Plaintiff, the plaintiff class, and defendants are citizens of different States and foreign states, and the aggregated amount in controversy in this class action exceeds $5 million, exclusive of interest and costs. This Court therefore has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

6.      Plaintiff also brings an individual claim with more than $75,000 at issue under New Jersey Revised Statutes § 2A:40-6. Thus, the Court also has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

7.      This Court has personal jurisdiction over Playtika because the company has sufficient minimum contacts to support specific personal jurisdiction in the state, and those contacts are directly related to Plaintiff's claims. See International Shoe Co. v. Washington, 326 U.S. 310 (1945).

8.      Playtika's minimum contacts with the state of New Jersey include ongoing contractual relationships created by the terms and conditions on the

Defendants' smartphone applications. Playtika required Plaintiff and all other New Jersey customers to agree to these terms. Both the Third Circuit and the United States Supreme Court, among many others, have found that personal jurisdiction is proper where a defendant "knowingly conducts business with forum state residents via the site". <u>Toys "R" Us, Inc. v. Step Two, S.A.</u>, 318 F.3d 446, 452 (3d Cir. 2003); <u>see also</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985); <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997). Furthermore, the Western District of Washington found that this very company, operating in that state just as it does in New Jersey, purposefully availed itself of doing business in Washington, making it subject to personal jurisdiction there:

> Playtika has purposefully availed itself of the privilege of doing business in Washington. Unlike cases involving lone or limited transactions, the record shows that Playtika has used its apps to sell many coins to many users located in Washington See Opp'n, Dkt # 57-2, Ex. 2 at 5-10. In addition, similar to Helicopter Transport Services, Playtika's sales to its users are part of ongoing relationships. 253 F. Supp. 3d at 1129. To turn a profit, Playtika's games rely on at least some users repeatedly running out of coins and then buying more in order to continue playing. Playtika thus "contemplates future consequences" when it sells coins to its users, satisfying the purposeful availment analysis. <u>Burger King</u>, 471 U.S. at 479, 105 S.Ct. 2174.

<u>Wilson v. Playtika, Ltd.</u>, 349 F.Supp.3d 1028, 1035 (W.D. Wash. 2018). Playtika operates in New Jersey as it did in Washington, creating ongoing relationships and purposefully availing itself of doing business in the state. Thus, it is clearly subject to personal jurisdiction in this Court.

9.    Playtika's contacts with New Jersey also include direct solicitations and other communications, instituted by the company, with customers in New Jersey. These include in-game messages and advertisements sent to players. Further, social and sweeps casino companies specifically target individuals who spend money on the apps, including by sending them direct, targeted advertisements to play the game, purchase coins, or participate in particular features of the games. See "How social casinos leverage Facebook user data to target vulnerable gamblers," PBS News Hour, available at https://www.pbs.org/newshour/show/how-social-casinos-leverage-facebook-user-data-to-target-vulnerable-gamblers (last accessed July 11, 2025). These communications and advertisements specifically directed by Playtika to particular current and prospective players in New Jersey constitute purposeful contacts with the state.

## RELEVANT FACTS

### A.    Defendant's Gambling Games

10.    Defendant Playtika is a game developer that has created games that simulate slot machines and other gambling games, and made them available to the New Jersey public through its smartphone applications, including, but not limited to Slotomania, Caesar's Casino Official Slots, House of Fun Slots Casino, and Vegas Downtown Slots.

11.    Playtika's games operate with virtual coins that are available for purchase. These virtual coins cannot be redeemed for real-world currency. However, when users play with and win more coins, the coins won can be used to extend their playing time without having to purchase more coins, and thus users obtain more amusement, a valuable consideration under New Jersey gambling law. The New Jersey Supreme Court has long held that the ability to play for free is a thing of value under New Jersey law. See Hunter v. Mayor & Council of Teaneck Tp., 24 A.2d 553 (N.J. 1942).

12.    The games in Playtika's apps are games of chance that simulate slot machines and other casino-style games, including blackjack, roulette, and poker. Below is a typical example of such games:



13.    Plaintiff William Barbarino spent money to purchase virtual coins, played Playtika's gambling games, and lost money on the games within the six months preceding the filing of this complaint.

**B.    Defendant's Games Have Gravely Harmed the Class and the State of New Jersey**

14.    The social ills caused by "social casino" and "sweeps casino" games are well-documented. Media reports how gambling addicts spend enormous, and completely unaffordable, amounts of money on these casino games. One nurse in Houston is reported to play a slot machine game similar to defendants' here for a minimum of two hours a day. (Ex. 1, https://www.nbcnews.com/tech/technews/addicted-losing-how-casino-apps-have-drained-people-millions-n1239604 (last accessed on Aug. 19, 2024)).  Between her and her husband, who plays the game with her, she estimates they have lost $150,000. She asked NBC News to withhold her name "so her family does not find out how much money they have spent on the game." (Id.). She said her and her husband "lie in bed next to each other, we have two tablets, two phones and a computer and all these apps spinning Reel Rivals at the same time. We normalize it with each other." (Id.). This is not an isolated instance.

15.    NBC News spoke to 21 people, including Shellz [the Houston nurse] and her husband, who said they were hooked on the casino-style games and spent significant sums of money. They described feelings of helplessness and wanting to

quit but found themselves addicted to the games and tempted by the company's aggressive marketing tactics. "Most of the 21 players wished to remain anonymous, as they were ashamed of their addictions and did not want their loved ones to find out about their behavior." (Id.). For example, a "42-year-old Pennsylvania woman said she felt saddened that she spent $40,000 [on a social casino app that competes with defendants'] while working as an addiction counselor. 'The whole time I was working as an addiction counselor, I was addicted to gambling and with no hope of winning any money back,' she said."

16.    It is scarcely a defense that "social casino" slot machines do not afford gamblers the opportunity to win real money because the currency in such games consists of "virtual coins" that are only redeemable as additional opportunities to play the games. This is so for at least two reasons. First, those with gambling addictions have been documented to lose thousands of dollars playing these slot machines, to the point of financial ruin and marital strife, even though these gamblers could never win their money back – only the opportunity for additional spins at the slot machine. Secondly, the law in many states, including New Jersey, holds that the opportunity to win additional amusement or playing time is illegal gambling even though the gambler never has the opportunity to win his or her money back. Hunter v. Mayor & Council of Teaneck Tp., 24 A.2d 553 (N.J. 1942).

17.    Anecdotal reports of gambling addictions in connection with social casino and sweeps casino games like defendants' are buttressed by recent scientific studies that confirm that such apps not only appeal to gambling addicts, but have a particular appeal to teenagers. One of the more troubling statistics comes from studies that show that 30% of users of these games between the ages of 12 and 18 later become regular gamblers. Hollingshead, et al., "Motives for playing social casino games and the transition from gaming to gambling (or vice versa): social casino game play as harm reduction?" 46 Journal of Gambling Issues 43 (2021).

18.    Companies in the social casino industry, including Defendants, have extracted tens of millions of dollars from New Jersey's economy in the last five years, all without adding anything to the economy of the state or paying a dime in taxes to New Jersey's treasury. Instead, the money extracted from New Jersey's economy ends up in not only in Defendant Playtika Ltd's homeland of Israel, but also to other foreign countries like Hong Kong, Gibraltar, Australia, and Cyprus, where major companies in the industry are headquartered. According to research on the industry as a whole, social casinos and sweeps casinos had estimated 2024 revenues of 7.1 billion and 10.6 billion, respectively. https://kpmg.com/kpmg-us/content/dam/kpmg/pdf/2025/sweepstakes-gaming-emerging-industry-primer.pdf. Even if New Jersey consumers represent but a small percentage of that

total, the reality is that a great deal of money is being siphoned from the state's

economy each year.

## CLASS ALLEGATIONS

19.    Plaintiff seeks to certify and represent a class pursuant to Rule 23(b)(3)

of the Federal Rules of Civil Procedure. The class sought to be certified is defined

as follows:

> All New Jersey residents who spent money on Playtika's gambling
> applications, including but not limited to Slotomania, Caesar's Casino
> Official Slots, House of Fun Slots Casino, and Vegas Downtown Slots,
> within the applicable statute of limitations for each of the class claims
> set forth below and continuing to a date to be set by the Court following
> certification. All employees of the Court and plaintiff's counsel, and
> their families, are excluded.

20.    This class action satisfies the numerosity requirement of Rule 23(a)(1)

because joinder of all members of the plaintiff class is impracticable. There are

thousands of New Jersey residents who are members of the class.

21.    This class also satisfies the commonality requirement of Rule 23(a)(2)

because there are central questions of fact and law that are common to the class.

Such common questions include, at a minimum, (a) whether Playtika's games are

games of chance; (b) whether free play is a thing of value under New Jersey law; (c)

whether Playtika's games constitute illegal gambling under New Jersey law; (d)

whether class members are entitled to recover their losses pursuant to Section 2A:40-

5 of the New Jersey Revised Statutes; (e) whether Playtika represented on its

website, in its terms and conditions, or in advertisements that its gambling games are legal in New Jersey; (f) whether such misrepresentations constitute deceptive trade practices under New Jersey law; (g) whether Playtika was unjustly enriched by its illegal activities; (h) whether Playtika's terms of service are unenforceable under federal law because they set forth the terms and conditions under which illegal gambling under federal law occurs; and (i) whether Playtika's terms of service, and the arbitration agreement and delegation clause contained therein, are each void under New Jersey law.

22.    The proposed class satisfies the typicality requirement of Rule 23(a)(3) because the named plaintiff's claims are typical of the claims of the class members. Both plaintiff and the class members lost money in an effort to win additional playing time and amusement on these illegal gambling games.

23.    The named plaintiff will fairly and adequately represent the interests of the class pursuant to Rule 23(a)(4). Plaintiff has no interests that conflict with the interests of the class. Furthermore, plaintiff has retained competent and experienced counsel with decades of experience litigating class cases.

24.    Plaintiff seeks certification of the class pursuant to Rule 23(b)(3), which allows class treatment of a claim where:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

25.    The common questions of law and fact in this case vastly predominate over any individual issues affecting only individual class members. The only individual issue presented by these class members is the exact amount of money damages to which each class member is entitled. Such damages issues are routinely held not to predominate over common questions in cases like this. Indeed, the individual damages issues can be quickly and accurately resolved by examining Playtika's own records.

26.    Class treatment is by far superior to individual litigation as a fair and efficient way to adjudicate this controversy. Given the relatively small individual amounts at issue, it is unlikely that there would be any adjudication of the class claims in this case at all.

27.   For this reason, none of the class members have any interest in controlling the prosecution of separate actions. Likewise, to our knowledge, no class member has commenced a pending action concerning this controversy.

28.   It would be much more desirable to concentrate this case in one action rather than allow the prosecution of individual actions because, as noted, such individual actions would likely never be filed because class members would be unlikely to have any motivation to file an individual suit.

29.   Plaintiff's counsel foresee no particular difficulties in managing this case as a class action because all of the necessary information to compensate the individual class members is contained in Playtika's own records concerning users' purchases and in the records of the platforms that facilitate the service. Defendant and the platforms it uses to provide the games keep extensive records which will demonstrate not only the aggregate amounts lost by players in New Jersey, but the identities of the individual players and the amounts of their individual losses. This information is easily ascertainable in discovery.

**PLAYTIKA'S GAMES VIOLATE NEW JERSEY AND FEDERAL LAW**

30.   Unregulated gambling is illegal in New Jersey, and there is a strong public policy against unregulated gambling in this state. The state's strong public policy against gambling includes a statutory right of persons who lose money or other things of value on illegal gambling to recover their money or thing of value.

31.     Playtika's games are illegal in the state of New Jersey. Section 2A:40-1 of the New Jersey Revised Statutes outlaws all gambling outside of what is specifically authorized by the Casino Control Act:

> All wagers, bets or stakes made to depend upon any race or game, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event, shall be unlawful.

N.J.R.S. § 2A:40-1.

32.     New Jersey law defines gambling as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the actor's control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome." N.J.R.S. § 2C:37-1(b).

33.     The New Jersey Supreme Court has long held that the ability to play for free is a thing of value under New Jersey gambling law. See Hunter v. Mayor & Council of Teaneck Tp., 24 A.2d 553 (N.J. 1942).

34.     When players risk virtual coins that they paid money for on the outcome of a spin of the reels in Playtika's slot machine games, hoping to win more money or additional playing time, they are gambling under New Jersey law, because they are staking something of value on a future contingent event not under the player's control. Playtika has never argued that a player can affect the outcome of the game through skill.

35.    Because the gambling games are illegal in New Jersey, when such games are played in New Jersey, they are also illegal under federal law pursuant to 18 U.S.C. § 1955, as more fully set forth in Count One below.

## CLAIMS FOR RELIEF

## COUNT ONE: SEEKING A RULING THAT THE GAMBLING IS ILLEGAL UNDER FEDERAL LAW, MAKING DEFENDANTS' TERMS OF SERVICE UNENFORCEABLE IN FEDERAL COURT

36.    Plaintiff incorporates the factual and legal averments of Paragraphs 2-35 by reference as if fully set forth in this count.

37.    Plaintiff seeks, on behalf of himself and the class, a determination that:

a. Playtika's conduct in New Jersey with respect to the games at issue is an "illegal gambling business" under 18 U.S.C. § 1955;

b. The "Terms of Service" found in Playtika's apps, (also available at https://www.playtika.com/terms-service/ set out the terms and conditions under which Playtika's illegal gambling is conducted; and

c.    The Terms of Service are unenforceable in federal court.

38.    The relevant language of 18 U.S.C. Section 1955 states:

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

**(iii)** has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

28 U.S.C. § 1955(b)(1).

39.    As to the first element required to find an illegal gambling business, under section 1955, Playtika's games are in fact illegal gambling under New Jersey law because they users risk something of value (virtual coins they paid real money for) for something of value (additional amusement) on a contingent future event which they cannot control the outcome of.

40.    As explained above, New Jersey law bans all bets or stakes made to depend upon a game of chance, outside of gambling explicitly authorized by the Casino Control Act. N.J.R.S. § 2A:40-1.

41.    As to the second element under Section 1955, Playtika certainly employs more than 5 persons who conduct, finance, manage, supervise, direct or own all or part of its business.

42.    The third element of Section 1955 is also met. Playtika has both been in business for more than 30 days in New Jersey, and has had gross revenue of more than $2000 in a single day. Playtika has conducted business in New Jersey for multiple years, and has collected gross revenue of more than $2000 in a single day on multiple occasions.

43.    Because all three elements of Section 1955 are met, Playtika's conduct in New Jersey constitutes an illegal gambling business, and plaintiff's first request for a legal ruling is due to be granted.

44.    The second request for a legal determination should also be granted. The "Terms of Service" found in Playtika's apps, do in fact set out the terms and conditions under which the illegal gambling thereon is conducted. Plaintiff expects Playtika will challenge the words "illegal" and "gambling" in this request, but will likely not dispute that its terms and conditions govern the operation of the games and all of the activity it conducts in New Jersey.

45.    Because the contract, as described above, is illegal pursuant to federal law, namely 18 U.S.C. § 1955, federal courts, pursuant to United States Supreme Court precedent, are not permitted to enforce the contract in aid of such illegal activity. See Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 84 (1982), which held:

> It is . . . well established . . . that a federal court has a duty to determine whether a contract violates federal law before enforcing it. "The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in . . . federal statutes. . . . Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power."

(quoting Hurd v. Hodge, 334 U.S. 24, 34-35 (1948)).

46.    Under this long-established principle, because defendants' terms are illegal and void in New Jersey, this Court cannot enforce the terms to send this case to arbitration.

**COUNT TWO: SEEKING A RULING THAT DEFENDANTS' TERMS OF SERVICE AS A WHOLE , THE ARBITRATION PROVISION ITSELF, AND THE DELEGATION PROVISION THEREIN ARE EACH VOID UNDER NEW JERSEY LAW**

47.    Plaintiff incorporates the factual and legal averments of Paragraphs 2-46 by reference as if fully set forth in this count.

48.    As set forth above, defendants' games are governed by terms of service that facilitate the illegal gambling. The terms of service are therefore void pursuant to Section 2A:40-3 of the New Jersey Revised Statutes, which states that "[a]ll promises, agreements, notes, bills, bonds, contracts, judgments, mortgages, leases or other securities or conveyances which shall be made, given, entered into or executed by any person, the whole or part of the consideration of which is for any money, property or thing in action whatsoever laid, won or bet in violation of section 2A:40-1 of this title, or for reimbursing or repaying any money knowingly lent or advanced to help or facilitate such violation, shall be utterly void and of no effect."

49.    Playtika's terms and conditions also contain provisions within the arbitration agreement that exist in aid of the illegal gambling conduct, and are thus void and unenforceable. For example, the terms attempt to prevent Playtika's customers from both arbitrating or litigating any dispute "in a private attorney

general capacity; or otherwise to seek recovery of losses or damages (whether for yourself or others) incurred by a third party" This provision would bar any claim under Section 2A:40-6 of the New Jersey Revised Statutes, which explicitly allows for the recovery of the losses of other parties. Thus, the provision attempts to exculpate Playtika from the clear consequences of its intentional illegal activity in New Jersey. See https://www.playtika.com/terms-service/ at 17(g).

50.    Playtika's terms also contain a provision stating that "Any challenge to the validity or enforceability of this Section 17(g) will be determined exclusively by the arbitrator." https://www.playtika.com/terms-service/ at 17(g). This provision is also in aid of the illegal conduct. Under United States Supreme Court precedent a contractual delegation clause like this one cannot take away from the Court the power to determine whether the contract, including the delegation clause, is void under New Jersey law because it is based on a gambling consideration. Coinbase, Inc. v. Suski, 602 U.S. 143, 151 (2024) (noting that "where a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge.") (citing Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 71 (2010)).

51.    Plaintiff seeks, on his own behalf and on behalf of the class, a determination that Playtika's terms of service, and, separately, the arbitration

agreement and delegation clause contained therein, are each void under New Jersey law.

## COUNT THREE: SEEKING A RULING THAT DEFENDANT'S TERMS OF SERVICE VIOLATE THE JAMS MINIMUM STANDARDS AND THE EFFECTIVE VINDICATION DOCTRINE

52.     Plaintiff incorporates the factual and legal averments of Paragraphs 2-51 by reference as if fully set forth in this count.

53.     Plaintiff and the members of the class are ostensibly subject to an arbitration agreement, which, as explained in Count Two, is void under New Jersey law. This purported arbitration agreement names Judicial Arbitration and Mediation Services (JAMS) as the arbitration forum.

54.     JAMS has promulgated "Minimum Standards for Arbitration Procedures" for use in consumer arbitrations, which are available online at https://www.jamsadr.com/consumer-minimum-standards/ (last accessed August 28, 2025). Principle 3 of these Minimum Standards states that "[r]emedies that would otherwise be available to the consumer under applicable federal, state or local laws must remain available under the arbitration clause, unless the consumer retains the right to pursue the unavailable remedies in court." https://www.jamsadr.com/consumer-minimum-standards/ (last accessed August 28, 2025).

55.     The United States Supreme Court has a held that arbitration agreements written to prevent a party from pursuing statutory remedies are invalid. American Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 235 (2013) (citing, inter alia, Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991)).

56.     The Italian Colors court, while holding that the exception did not apply to the case at bar, stated in strong terms that the effective vindication doctrine "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." 570 U.S. at 236.

57.     Playtika's Terms of Service contain precisely such a provision, purporting to forbid the assertion of certain statutory rights in arbitration and litigation. For example, the terms attempt to prevent Playtika's customers from arbitrating or litigating any claim concerning the losses of third parties, a statutory right directly authorized by Section 2A:40-6 of the New Jersey Revised Statutes.

58.     These provisions of Playtika's Terms of Service, including but not limited to the prohibition on actions for the recovery of the losses of third parties and private attorney general actions, run directly afoul of the JAMS minimum standards and the effective vindication doctrine set forth by the United States Supreme Court.

59.    Plaintiff, on behalf of himself and the class, seeks a determination that provisions in Playtika's Terms of Service that prevent customers from effectively vindicating statutory rights are void and unenforceable.

## COUNT FOUR: CLASS CLAIMS FOR INDIVIDUAL LOSSES

60.    Plaintiff incorporates the factual and legal averments of Paragraphs 2-59 by reference as if fully set forth in this count.

61.    The New Jersey Revised Code provides a statutory civil cause of action to recover money paid and lost due to gambling. Section 2A:40-5 provides:

> If any person shall lose any money, goods, chattels or other valuable thing, in violation of section 2A:40-1 of this title, and shall pay or deliver the same or any part thereof to the winner, or to any person to his use, or to a stakeholder, such person may sue for and recover such money, or the value of such goods, chattels, or other valuable thing, from such winner, or from such depositary, or from such stakeholder, whether the same has been delivered or paid over by such stakeholder or not, in a civil action provided such action is brought within 6 calendar months after payment or delivery.

NJRS. § 2A:40-5.

62.    On behalf of himself and all others similarly situated, William Barbarino seeks for each class member recovery of the amount paid through purchases on Playtika's websites within the six months preceding the filing of this complaint minus any amounts that player was actually paid back as a result of winnings, pursuant to Section 2A:40-5 of the New Jersey Revised Statutes.

## COUNT FIVE: INDIVIDUAL CLAIM FOR THIRD PARTY LOSSES

63.    Plaintiff incorporates the factual and legal averments of Paragraphs 2-62 by reference as if fully set forth in this count.

64.    After the six-month period during which the losing gambler may recover his or her money, the New Jersey Revised Statutes provides that any person may then sue and recover the losses:

> If the person who shall lose and pay such money, or lose and deliver such thing or things as aforesaid, shall not, within the time aforesaid, without collusion, sue for the money or other thing or things so lost and paid, or delivered, any other person may sue for and recover the same, with costs of suit, from such winner, depositary or stakeholder as aforesaid; the one moiety thereof to the use of the person suing for the same, and the other moiety to the use of the state; provided the action is instituted within 6 calendar months from and after the expiration of the time limited in section 2A:40-5 of this title for the loser to sue for the same.

NJRS § 2A:40-6.

65.    Pursuant to Section 2A:40-6 of the New Jersey Revised Statutes, William Barbarino  claims, on his own behalf, the total of the net losses by purchasers of virtual currency on Playtika's gambling apps that occurred more than six months prior to the filing of this complaint that are not, for any reason, recoverable by the class pursuant to counts five and six.

## COUNT SIX: CLAIMS FOR VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

66.    Plaintiff incorporates the factual and legal averments of Paragraphs 2-65 by reference as if fully set forth in this count.

67.    The New Jersey Consumer Fraud Act, contained in Title 56 of the New Jersey Revised Statutes forbids, among other things, "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression or omission, in connection with the sale or advertisement of" any goods or services.  NJRS 56:8-2.

68.    Playtika offers the gambling games to the public in New Jersey, implicitly representing that they are legal in the state. Furthermore, the terms and conditions repeatedly insist that the terms are enforceable and affect the legal obligations of Playtika's customers, when, in reality, they are void and unenforceable in New Jersey because it rests on a gambling consideration. N.J.R.S. § 2A:40-3.

69.    Playtika's insistence that the games are legal and the contract is binding violates the New Jersey Consumer Fraud Act because it is deceptive to consumers, and because it is a representation that a good or service has characteristics or standards that it does not have.

70.    The New Jersey Consumer Fraud Act provides a private right of action, allowing consumers to recover money lost to deceptive practices, along with treble damages, attorneys' fees, and costs. NJRS § 56:8-19.

71.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adopting the class allegations found in Paragraphs 19-29 above, Plaintiff seeks to

recover for the class all money lost by a class of persons who played Playtika's illegal gambling games during the six-year statute of limitations of the Consumer Fraud Act.

## PRAYER FOR RELIEF

Pursuant to the legal and factual averments above, Plaintiff respectfully asks this court to:

1. Take jurisdiction of this cause;

2. Following discovery, certify counts one, two, three, four, and six of this complaint as a class action pursuant to Rule 23(b)(3);

3. Appoint the undersigned as Class Counsel and the named plaintiff as class representative;

4. Enter a final judgment declaring that Playtika's games, when played in New Jersey, constitute an "illegal gambling business" under 18 U.S.C. § 1955;

5. Enter a final judgment declaring that the gambling is conducted pursuant to the terms and conditions in Playtika's apps, and that these contracts are void under New Jersey law and cannot be enforced;

6. Enter a final judgment against Playtika awarding plaintiff and the class members a refund of money spent on Playtika's illegal gambling games in

the period between six months prior to the complaint and the entry of judgment under New Jersey's gambling loss recovery statute;

7. Enter a final judgment against Playtika awarding plaintiff and the class members a refund of their losses, trebled, unrecovered under count three, during the period between six years prior to the filing of the complaint and the entry of judgment, pursuant to the New Jersey Consumer Fraud Act;

8. Enter a final judgment against Playtika awarding to plaintiff the amount of all money lost in Playtika's illegal gambling games by New Jersey residents during the period between one year prior to the filing of the complaint and six months prior to the filing of the complaint, to the extent that such losses have not been recovered under counts four and six;

9. Award Class Counsel reasonable attorneys' fees and expenses to be paid from the common fund judgment in favor of the class;

10. Award the named plaintiff a reasonable sum of money for her services in this case on behalf of the class, also to be paid out of the judgment in favor of the class;

11. Award interest and costs; and

12. Award any other relief to which the Court finds plaintiff and the class are entitled.

Respectfully submitted this 29th day of October, 2025.

/s/    Nicholas Conlon

Nicholas Conlon
Attorneyfor Plaintiff Sharon King

**COUNSEL:**

Nicholas Conlon
Jason T. Brown
Brown, LLC
111 Town Square Pl. #400
Jersey City, NJ 07310
Telephone: 877.561.000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

Dargan M. Ware (*pro hac vice* anticipated)
John E. Norris (*pro hac vice* anticipated)
DAVIS & NORRIS, LLP
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
dware@davisnorris.com
jnorris@davisnorris.com